1 U.S. 458 (1789)
1 Dall. 458
THOMPSON Plf. in Err.
versus
MUSSER: TWO Actions.
Supreme Court of United States.

*460 Upon these records the general errors were assigned, and in nullo est erratum pleaded in both causes. They were argued together, first at Lancaster, and, afterwards, in two different terms, at Philadelphia, by Bradford, Lewis, and Wilson, for the Plaintiff in Error; and by Chambers, Hartley, Yeates, J.B. M`Kean, Sergeant, and Ingersoll for the defendant.
*461 The causes being held under advisement for a considerable time, in hopes that a compromise would take place between the parties, THE JUDGES now delivered their opinions separately and at large.
M`KEAN, Chief Justice:
The arguments on the records before the Court, have been ably and learnedly enforced. To these, and to the authorities produced on both sides, I shall briefly refer, while I consider in their order, the objections that have been made in favour of the Plaintiff in Error.
1. In support of the first objection, a variety of precedents have been shewn of declarations upon penal bills from 1 Mod. Ent. 180. 28r. Brown's Mod. Intrandi, &c. &c. and the following books were cited: Doug. 658. 8 Co. 133. 4 Bac. Abr. 13. 7 Co. 10. a. 4 Bac. Abr. 16. 363. 5 Bac. Abr. 321. 1 Cro. E. 548. 2 Cro. 183. 500. Cro. C. 515. Hob. 82. 232. 12 Mod. 81. 1 Bulstr. 163. Salk. 662. 2 L. Raym. 814. Carth. 322. Doctrin. Placit. 829. Co. Litt. 303.
But the Counsel for the Defendant in Error have answered these cases, by urging, that over of the penal bill was prayed and granted; that the Defendant below pleaded in chief to the declaration, payment, and joined issue; and that the verdict was for the Plaintiff below. They contended, that the Plaintiff was only bound to prove the gift of the action; that it was not incumbent on him to prove that the smaller quantity of 100,000 weight of tobacco was not paid; that under the act for defalcation ( 1 State Laws 48.) the Jury are to find the sum really due; and that the defect, if it was one, is cured by pleading over in chief, and, also, by the verdict. In corroboratio of these positions, they cited, Doug. 658. 8 Co. 133. Vaugh. 93. 4. 5. 4 Bac. Abr. 19. 16 Hob 199. 1 Lill. Pract. Reg. 418. Cro. C. 209. 5 Com Dig. 57. 58. 60. 1 Mod. 169. 1 Salk. 37. 38. 133 8 Mod. 356. 1 Lev. 190. 12 Mod. 44. Cro. I. 668. Tri. per pais. 289. 290. 306. 307. 368. Cro. Car. 515. Cro. E. 68. 12 Mod. 459. 414. Carth. Rep. 80. 94. 2 Will. 380. Cowp. 407. 1 Stra. 233. 2 Stra. 925. 1006. 1011. 1 Will. 255. 1 Salk. 9. Bull. N.P. 147. 148. 3 Black. 410. Barr. on Stat. 193. 2 Black. 406. 1 Vent. 108. 114. 122. 156. 1 Com. Dig. 60. 2 Vent. 153. Keelw. 187 b. 7 Rep. 10 a. 9 Vin. Abr. 599. pl. r. 10 Vin. Abr. 3. pl. r. 16 & 17 Car. 2. c. 8.
We are clearly of opinion, that this defect in the declaration, with respect to the averment, cannot now be taken advantage of as an error. It might indeed, have been fatal on demurrer; but, at this period of the cause, it is cured by the plea in bar, by the verdict, and by the statutes of Jeoffails. The defendant below pleaded payment, which admits the declaration to be good. 10 Vin. Abr. 3. pl. 12. The penal bill became a part of the record by the oyer; and if the Jury had not been satisfied, that the smaller quantity was *462 not paid, they would never have given a verdict for 114,286 weight of tobacco. This was the very thing litigated and determined; and it was the province of the Jury, under the act of defalcation, to ascertain the balance, which must have appeared from the evidence. The verdict, therefore, also aids the omission of the averment. See 3 Black. Com. 394. Carth. 389. Jenk. Cent. 21. ca. 39. Ibid. 288 ca. 24. Several of the cases cited on both sides do not apply; but all the late authorities (many of which are in point) support our judgment on this occasion. Those cases which bear a contrary aspect, occurred before the last of the statutes of Jeoffails, and previous to the more liberal decisions of modern Judges. 2 Burr. 756. The general rule, however, is now well established, that if a Plaintiff states his title in his declaration in a defective manner, it will be cured by a verdict; but not so, if the title is totally defective in itself. Cro. E. 778.
2. The second objection is to the verdict; and to prove the invalidity of that, the Counsel for the Plaintiff in Error, have cited, Cro. J. 681. Yelv. 71. 2 Roll's Abr. 693. tit. Verdict pl. 5. Vaugh. 75. 4 Com. Dig. 145. 1 Inst. 227. Cro. Jac. 31. Cro. E. 133. 2 Stra. 1089. 2 L. Raym. 1581. 3 Lev 55.
To this the Defendant's Counsel have replied, that strict form in a verdict is not now required; that it needs only to be understood what the intention of the Jury was, agreeably to which the verdict may afterwards be moulded into form; that the constant practice in all the Courts in this State, as well before as since the Revolution, has been to enter the verdicts on the issue of non solvit in the manner that has been used in the present case; that the intention of the Jury is plain; and that the mode of entering their verdict is the act of the Clerk.  Hob. 54. Co. Litt. 227. a. Salk. 328. pl. 2. 2 Lill. Abr 798. 4 Bac. Abr. 58. 59. 99. 5 Bac. Abr. 297. 298. 314. 2 Burr. 700. Cro. E. 664.
The Court, concurring in these reasons, cannot allow this exception.
3. That the judgment is for money, and not for the tobacco itself, or, if that cannot be had, then for the value thereof, makes the third objection; in support of which the following books are cited; Yelv. 71. 8 Vin. Abr. 41. pl. 15. 17. 18.
But it is contended on the other side, and such is the opinion of the Court, that is the verdict is good, the judgment must likewise be so; for being entered generally, when it is drawn at large, it may be put into form; and the merits having been tried, justice must be obtained without being entangled in technical niceties.  Cro. J. 502. 6 Mod. 270. 1 Wils. 1. 2 Stra. 931. 1013. 1 Sid. 376. 5 Mod. 227. 1 Vent. 119. 2 Wils. 380. Cowp. 407.
4. The last error assigned in this record, respects the refusal of the Court of Common Pleas to admit the Defendant below to read in evidence, a copy of an act of Assembly of the State of Virginia, printed by the Law Printers there, and stitched up, with a few other acts, in a blue paper cover.
*463 To maintain this objection, it has been argued, that in Great-Britain a public act of Parliament is proved by the printed statute book; that a general history is a proof of a general transaction, though not of a particular one; that this is a general act, and promulgated in the usual mode of promulgating the laws of Virginia; that by the fourth article of the late Confederation, the Courts are obliged to take notice of the acts and proceedings of other States, as much as if they had occurred here; and that the ordinances of France, the laws of the Danish islands, proclamations in our sister States, the statutes of England, Ireland, and Scotland, heralds' books, and registers', have frequently been read in evidence in this Court, because of their public notoriety. 12 Mod. 86.215. 216. 403 12 Vin. Abr. 119. 1 Atk. 47. 2 Eq. Abr. 406. 409. Coup. 407. Gilb. L.E. 13.
In opposition to these arguments, it was contended, that the laws of Virginia ought to be proved as other facts in foreign countries; that in Great-Britain private statutes must be proved, either by sworn copies, or authenticated under the Great Seal; that every man is, indeed, obliged to know the laws of his own country, for they are presumed to be in every man's breast, and the statute book contains hints of them; but the laws of Virginia are unknown to Pennsylvania, and are not in any wife obligatory upon us; that the reason why private statutes must be proved before they can be received in evidence, applies strongly to foreign acts of Assembly, for no man is obliged to know them; that an act of Assembly in print is no better verified than if it were in writing only; that this act of Assembly might have been forged, or repealed, and yet, it would be impracticable on a sudden, pending a trial, to prove it; and that there is no precedent of a determination of any Court, that such a copy is good evidence; for, indeed, it militates against the general rule of evidence, "that the best evidence the nature of the case will admit, ought to be produced," and a sworn copy, compared with the votes might have been had, or some other regular authentication. Gilb. L.E. 4. 5. 13 16 17. 12 Mod, 403. 12 Vin. Abr. 129. pl. 59. Ibid. 119. 120. 1 Salk. 121. Cowp. 174. Prec. in Chan. 207. 1 Lill. Abr. 207. 3 Salk. 154. Doug. 1. 572. Bull. N.P. 21. Old Law of Ev. 66. Tri. per Pais. 232. 3 Journ. of Cong. 493. 12th November, 1777.
This subject has been very ingeniously discussed. It is in a great measure new; so far, at least, that it does not appear to have come formally before any Court, 'till it arose in the present cause at Lancaster. But, at the same time, I must remark, that I never heard 'till then of such evidence being refused; and, without opposition, I am certain it has very frequently been admitted.
Our law is not confined to particular precedents and cases, but consists in the reason of them; for, the reason of the law, is the life of the law. I admit, that this printed copy of an act of assembly, though it purports to have been printed by the law printers of Virginia, *464 is not such good evidence as a sworn copy, compared with the rolls, or an exemplification under the Great Seal; but these modes of authentication are, likewise, inferior to the original law itself. If the Plaintiff in Error had been sued in Virginia, this printed book of the acts of Assembly would there, unquestionably, have been good evidence; and I can discern no satisfactory reason, why, as he is sued here, the same evidence should not be received, at least prima facie; for, although it were a forgery, and the proof in that respect, could not on a sudden, during the short period of a trial, be produced; yet, in case of any reasonable suspicion, the Court might reserve the point, and give the party leave upon establishing the fact, to move for a new trial.
Lord Chief Justice Willes says, in the case of Omichund v. Barker, 1 Atk. 21. that "the rules of evidence are to be considered, as positive artificial rules, framed by men for their convenience in respect to the transaction of business in the Courts of Justice;" but there has been no rule established, as far as my knowledge extends, concerning the evidence now under consideration. It has been a rule in the Courts of Great-Britain, "to allow such proof as they beyond the sea will allow." This, however, must be subject to restrictions: And, although the general principle and rule of evidence is, "that the best evidence the nature of the thing will admit, shall be given," yet, by constant practice and allowance of the Judges, this rule is frequently dispensed with. Were it not, indeed, for this, controversies in Courts of Justice would be entangled with too many difficulties, and attended with too great trouble and expence, to permit men to seek for redress of many wrongs in a legal way. The same reason, that would induce this Court to require a law of Virginia to be proved as any other fact, must induce them to insist upon the like proof of the Laws of every other State, kingdom, or empire, however remote; a position pregnant with intolerable inconvenience; destructive to trade, commerce, and credit; and, in several cases, fatal to justice.
Though the practice of the Courts, or forms of pleadings, which pass sub silentio, do not make the law; yet, in a case like the present, a constant practice of permitting acts of Assembly, or laws to be read out of printed books, without opposition, is a great evidence of the law; and such printed copies, being of public notoriety, and relied on as genuine, have the presumption of authenticity, in their favor, and afford a reasonable satisfaction to the mind of their truth and accuracy.
Upon the whole, therefore, I am of opinion, that the Court below erred in the rejection of the evidence in question; and that for this cause only, the judgment ought to be reversed.
With respect to the errors alleged against the second record, they have all, except one, been considered and disallowed, in the course of the preceding observations. The one that remains to be decided is, that the Court below, on motion of the Counsel *465 for the Plaintiff there, permitted the declaration to be amended by the writ, after the Jury had been sworn; and then had the Jury sworn again, and received their verdict, without consent, without giving the Defendant liberty to plead anew, and without an imparlance, or awarding the payment of costs by the Plaintiff.
In support of this objection, it has been urged, that the amendment was an alteration in substance, and changed the nature of the defence; that there is no precedent of such an amendment after the Jury was sworn, therefore, it is hoped, that this Court will not enlarge the precedents or amendments, by making a new one; and that the Court below had no power to discharge the Jury after sworn, without consent; or, if they had, that they ought to have granted an imparlance Stiles' Pract. Reg. 45. 49. Salk. 47. 3 Lev 347. Carth. 405. 2 Black. Rep. 785. 2 Stra. 890. Fitz. 193. 3 Bac. Abr 236. Gilb. Pract. C.P. 79. 80.
On the other side, it was insisted, that the amendment was only to make the declaration conformable to the writ; that the merits came before the Jury, and the cause was fairly tried; and that such an amendment may be made at any time. 3 Black. Com. 406. Conyngh. Rep. 43. 2 Burr. 756. 5 Burr. 2834. 3 Lev. 347. Sir T. Raym. 53. 4 Burr. 2569. Cowp. 841. 1 Wils. 7. 4 Bac. Abr. 30. Comb. 13. 2 Vin. Abr. 320.
The Court would willingly support this proceeding, if they legally could; for, they are no friends to exceptions like the present, where the merits have been fairly tried. But we can find no case, or opinion, to favor it in all its parts. I have met with but one, which mentions, that "after a Jury sworn, sometimes a Juror is withdrawn, on purpose that there may be an amendment, if it be not entered upon record" This case was not mentioned at the bar, but is reported in Comberbach 419. Rex v. Edwards.
Suppose, however, that the Court had given the Plaintiff leave to make the amendment before the trial, which they might unquestionably have done, as the nature of the action was not thereby changed; yet, it was in the election of the Defendant, either to take costs of the Plaintiff, or to imparl to the next term; for, he had a right to advise upon a plea fitting the declaration so amended; or, if the amendment did not, in his opinion, require an alteration of the plea, he might take the costs, and enter the same plea immediately. At all events, I think, he ought to have been allowed, if he pleased, to plead again after the amendment, and so join a new issue. 1 Lill. Abr. 70. d. 71. a. Comb. 58. 2 Stra. 950. And I have found two cases in Judge Jenkins's, Centuries, in which it is held, that a Jury discharged before verdict, shall not be charged again, but there must be a new venire facias. Jenk. Cent. 6. ca. 9. Ibid. 283. ca. 13.
Since, then, the facts relating to the amendment appear upon the record, I am of opinion, that the proceeding of the Court below was erroneous: And this judgment, also, ought, therefore, to be reversed.
*466 ATLEE, Justice:
In these two causes of John Thompson, Pltff. in Error, v. John Musser, I concur with THE CHIEF JUSTICE in every point except two.
One of these is the objection respecting the Virginia act, and the other is the mis-trial. As to the first, it seems, that the Justices below, on the trial of the cause, refused to admit in evidence, on the part of Thompson, a printed paper, said to be an act of Assembly of the State of Virginia, upon which a bill of exceptions was filed; and this is now assigned as one cause of error.
Had that act come before them exemplified under the seal of the State of Virginia, the Court ought certainly to have admitted it, as it would then have been within the rule of law, which requires the utmost evidence the nature of the fact is capable of; but, as it was offered to them without such exemplification, or any proof of its being compared with the records of that State, or even of its being printed by the Printer of the Laws of the State, I cannot join in the opinion, that the Justices below have erred in rejecting it; or, that their having refused to admit it in evidence in that situation, is a sufficient cause for the reversal of their judgment. It was offered to prove a fact respecting a certain class of Virginia certificates; and from the face of it, I think it will appear, that it is not the whole law of the State respecting those certificates. This might have been a reason with the Court below for rejecting it, and I should have thought it a sufficient one; for a record is not to be taken by parcels, and the whole is evidence, or none.
We are to pay a due regard to the laws of our Sister States, when we are under the necessity of determining upon contracts which have taken place within those States, and have reference to those laws: but we are to be cautious, and not to suffer ourselves to be imposed on. Exemplifications are easily obtained, and they are not expensive. We find that the Judges in England have generally had the precaution to require exemplifications of acts of Parliament, which did not concern the kingdom in general, properly compared and certified, before they would admit them in evidence in their Courts of Justice; though made within the kingdom, they do not deem themselves obliged by their offices to take notice of them without such exemplification. And so, I think it is a proper and necessary precaution in the Courts here, to require certified copies of the laws of our Sister States, before they are admitted with us; especially when they appear before us, as this did, in pamphlets of a few sheets, not bound up with their body of laws; and, as we are not obliged, and cannot be supposed, to know their laws, it seems the more necessary.
As to the mis-trial in one of the causes, it seems to me, that the parties themselves, at the time of the trial, waved every advantage that might have been taken of it. They permitted the amendment, and went on to trial without demanding an imparlance; the merits of the cause were fully heard; and, after the Jury left *467 the bar, the Counsel on both sides agreed, by writing under their hands, that the verdict should be taken by the Clerk of the Court agreeably to what should appear to be the intent of the Jury, and that they would should it into form. After this conduct, and such proceedings, I think the objection ought not to be supported.
But, as my brethren think differently from me on these points, the judgment in both causes must be reversed.
RUSH, Justice:
There can be no doubt, that the laws of Virginia are evidence; but the question before the Court is, in what manner shall they be authenticated, in order to render them admissible evidence to a Jury?
Upon established rules of law, and, also, on general principles, I am of opinion, that the Virginia act, printed by the Government Printer, ought to have been given in evidence to the Jury.
No evidence shall be received, which supposes a still greater evidence behind, in the parties own possession and power. On this ground, the printed act ought to have been laid before the Jury; because, it cannot be said, that either the original, or a copy under seal, was in his possession or power. Both might have been refused to him at the office in Virginia; and this Court, having no controul over that office, could not have given any relief. All laws should be construed, as far as may be, so as to guard against what men may do; and not to trust to what they will do.
Sir William Blackstone, in the third volume of his Commentaries, page 336, speaking of the Court of Chancery, says, "If a question "comes before that Court, or a Court of Law, which is properly "the object of a foreign municipal law, they will both receive information "what is the rule of the country, and will both decide "accordingly. Both Courts follow the Law of Nations, and collect "it from history, and the most approved authors of all countries, "where the question is the object of that law; as in the case of the "privileges of ambassadors, hostages, or ransom bills. In mercantile "transactions, they follow the marine law, and argue from the "usages and authorities received in all countries." From this language, it would seem, to be the opinion of the author, that the same evidence, which any Court abroad would have received, would also be received in England, where the subject in litigation requires it.
If, then, the Virginia law might have been given in evidence in that country, of which there can be no doubt; it was the duty of the Court in Pennsylvania to have received information of the rule, or law, of Virginia, from the same source that would have been satisfactory to the Judges there. Every country has a right to promulgate its laws as it pleases; and whatever printed authorities are received in a foreign country as evidence of its laws, are, in my opinion, evidence of the same laws to a Court and Jury in Pennsylvania.
*468 To the larger record, as it was called at the bar, to distinguish it from the other, a second objection has been made, to wit, that the declaration does not say, that the Defendant neglected to pay or deliver 100.000 weight of tobacco; the declaration being on a penal bill. With regard to this point, I rather think that the verdict will not cure the objection. The case in Cro. Car. 515. Baynes v. Brighton, seems to be in point. Debt was brought for forty shillings; and the declaration was held ill after verdict, because the Plaintiff had not alledged, that the twenty shillings were not paid at the day: for, otherwise, the forty shillings were not due. I am induced to lay the more stress on this authority, because the principle of that case is recognized both in Douglas and Salkeld's reports. In Dougl. 657. by a recent and solemn decision of the whole Court, it has been held, that if the indorsee does not prove at the trial a demand on the acceptor and refusal, even a verdict, in such case, will not help him. The well known case of omitting the Scienter is there admited to be law. The case is expressly referred to as reported in Salk. 662. The declaration was, that the Defendant kept a bull that used to run at men, but did not say scienter, &c. This was held ill after verdict; for the action does not lie, unless the master knows of this quality; and the Court cannot intend it was proved at the trial, as the Plaintiff need not prove more than was in his declaration. So in the case at bar: the Court cannot intend that the Plaintiff proved at the trial, that the Defendant did not pay, or deliver, 100,000 weight of tobacco; because, not being alledged in the declaration, the Plaintiff was not under any necessity of proving it.
With respect to the other objections to the larger record, I entirely concur with my Brethren.
I concur, also, that there has been a mis-trial in the other cause tried between the same parties. Black. Rep. 785. is in point. Where the declaration is amended in a material point, a rule should be given to plead. It the Plaintiff has a right to amend, he is also bound at the same time to give a rule to plead, that the Defendant may not be surprised at the trial; and, omitting to do so, is error.
The Jury was sworn to try the specific and identical issue joined by the pleadings; and if that was afterward altered or changed by the Plaintiff, the verdict will not help it; because a verdict will not help that which was not in issue. Gilb. Hist. and Pract. Com. Pleas. p. 100.
The Court below had no power to discharge the Jury after they were sworn, without the consent of both parties. It is true, that in 2 Stra. 1117. it appears, that a Jury was dismissed after they were sworn, because no issue was joined. But as there was an issue joined in the cause of Musser and Thompson, the Court below have acted erroneously, and contrary to law, in discharging the Jury without the consent of both parties.
I think, upon the whole, that judgment should be reversed in both causes.
*469 BRYAN, Justice:
As I agree entirely in the opinions given by the Chief Justice, for the reasons which he has assigned, I shall content myself with generally declaring, that I think the judgments on these records ought both to be reversed.
BY THE COURT:  Let the judgments of the Court below, on both records, be set aside.